STACY, C. J., dissenting.
BARNHILL and WINBORNE, JJ., concur in dissent.
This was a civil action instituted by the city of Raleigh under C. S., 7990, to enforce a lien for unpaid taxes for the years 1925 and 1926. Taxes for those years were levied on certain lots in the city of Raleigh then owned by J. R. Jordan and C. P. Grantham. These lots were subsequently acquired by the defendant, the Metropolitan Life Insurance Company, in 1931.
The cause was heard upon an agreed statement of facts. The court below held that under the provisions of ch. 181, Public Laws of 1933, the *Page 56 
taxes on this property for 1925 and 1926 were barred and uncollectible. Plaintiff appealed.
Section 7 of the Act of 1933 is in these words: "All tax liens held by counties, municipalities, and other governing agencies for the year one thousand nine hundred and twenty-six and the years prior thereto, whether evidenced by the original tax certificates, or tax sales certificates, and upon which no foreclosure proceedings have been instituted, are hereby declared to be barred and uncollectible."
It seems reasonably clear that it was the intention of the Legislature to bar the enforcement of liens for unpaid taxes for the year 1926 and prior years, under whatever guise attempted, and that this intention is adequately expressed in the act. Nor do we think there is any constitutional limitation upon the power of the General Assembly which would invalidate the enactment of such a law. One of the purposes of the Act of 1933 was to permit past due taxes to be refunded, that is, to permit the countries and municipalities to enter into agreements with distressed taxpayers by which the taxes might be paid by installments. But the statute gives the counties no power to enter into any arrangement with regard to taxes for the year 1926, or any years prior thereto. The act permitted the refunding for the years subsequent to 1926 only. The use of the phrase "all tax liens" was obviously intended to include more than tax sales certificates, and to render uncollectible all taxes, however the lien was evidenced, upon which no foreclosure proceeding had been brought. The term "held," as used in this connection, may not be limited to the physical holding of a tangible thing, but is sufficiently comprehensive to include rights appertaining.
The power of the Legislature to release delinquent taxes, where not forbidden by the Constitution, is well recognized. Cooley on Taxation, 4th Edition, section 1254; Illinois Central Railroad Co. v. Commissioners,128 Ky. 268, 108 S.W. 245; Auditor-General v. O'Connor, 83 Mich. 464,47 N.W. 443; Stone v. Comrs., 210 N.C. 226, 186 S.E. 342.
In some states the Constitution directly forbids the Legislature to pass any law releasing or remitting taxes. There is no such provision in our Constitution. If other parts of the Constitution should be considered as preventing the direct release of taxes, there would seem to be no question that the Legislature may deal with the lien of taxes as it sees fit, may determine when there should be a lien, when it should attach, and when it should cease. Compare: S. v. Fibre Co., 204 N.C. 295, 168 S.E. 207, and cases cited; Lumber Co. v. Graham County, 214 N.C. 167, 198 S.E. 842, and statutes cited. The effect of this act is to destroy the lien, and, therefore, C. S., 7990, does not afford an appropriate remedy. The instant action is not to recover taxes from a delinquent *Page 57 
taxpayer but to enforce a lien on land acquired by the present owner from the delinquent taxpayer, five years after the taxes were levied. It should be understood that in 1933, when this act was passed, action on tax sales certificates for 1926 and prior years under the foreclosure act, C. S., 8037, had already become barred by the time limitation in the foreclosure act itself.
The discretionary provision contained in section 14 of the act does not apply to Wake County. We conclude that the judgment of the court below should be
Affirmed.